In re **SHO–ME NUTRICEUTICALS, INC., Sho–Me Nutriceuticals Acquisition Company, Sho–Me Natural Products, Inc., Debtor.**

Nos. 8:04–BK–09595–ALP, 8:04–BK–09597–ALP, 8:04–BK–09982–ALP.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Jan. 3, 2005.

Chad S. Bowen, Jennis & Bowen, PA, Tampa, FL, for Debtor.

Denise E. Barnett, Tampa, FL, for Trustee.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW MEMORANDUM OPINION

### (Doc. No. 162)

· ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS CAUSE came on for consideration at a duly scheduled hearing to consider the Amended Motion for Relief from Automatic Stay (Doc. No. 162) filed by CIT Technology Financing Services, Inc. (CIT). Although the Motion as presented to this Court seeks relief from automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code in order to recover possession of certain equipment identified as 1–IMA 40F Capsule Filler (Equipment), it is really an attempt to litigate the true legal nature of the underlying dispute, which involves this Equipment.

CIT contends that Sho–Me Natural Products, Inc. (Debtor) has no cognizable legal or equitable interest in the Equipment involved in the dispute, thus, the Debtor has nothing more than a possessory interest in the Equipment, which is not protected by the automatic stay. Based on the foregoing, CIT contends that it is entitled to relief from the automatic stay for "cause" pursuant to Section 362(d)(1) of the Code, and should be authorized to recover the equipment involved in the dispute.

The evidence presented at the final evidentiary hearing presents a classic picture of how not to structure an ordinary commercial transaction and is a prime paradigm of a total disregard of all formalities required by the U.C.C. governing the creation and enforcement of security interest.

The evidence presented to this Court consisted of documentary exhibits offered and admitted into evidence by both CIT and the Debtor which revealed the following relevant facts which are undisputed and are as follows.

At the time relevant, Sho–Me Nutriceuticals, Inc., Sho–Me Nutriceuticals Acquisition Company, and Sho–Me Natural Products, Inc. (the Debtors), were engaged in the business of manufacturing dietary supplements and drugs in its facility located in Brooksville, Hernando County, Florida. It is without dispute that the facility in Brooksville was the only facility owned and used by the Debtors and the Debtors never maintained any place of business in Hillsborough County, Florida.

Sometime in the year 1999, a corporation known as Matco Enterprises, Inc., (Matco) located at 10008 N. Dale Mabry Highway, Tampa, Florida, commenced negotiations with the Debtors for the purpose of a possible acquisition by the Debtors of all outstanding shares in Matco. At the time relevant, Matco maintained its

principal place of business in Hillsborough County, Florida, and never maintained any business in Hernando County, Florida.

On February 22, 1999, Matco entered into an Equipment Lease Agreement (Lease) with Newcourt, Contract No. 100–0000121–000. (Joint Exhibit 1). The leased Equipment was identified as follows: 1–IMA 40F Capsule Filler; Vacuum Unit Arrangement; Vacuum Pump; Suction Aspirator; Suction Power Bowl; Forced Extraction System w/All Options, Tooling and Attachments. Matco also executed a Security Agreement granting a security interest in the Equipment involved to Newcourt. Newcourt filed a UCC1–Financing Statement and perfected its security interest in the Equipment.

In light of an anticipated merger with Matco or stock acquisition by the Debtors, the Equipment specified in the Lease was in fact delivered to 15431 Flight Path Drive, Brooksville, Florida 34609, the manufacturing facility of the Debtors. It is without dispute, that the stock acquisition or merger never came to fruition and the Debtors never acquired any stock in Matco. Matco apparently faded-out and completely disappeared from the scene and it appears that Matco is no longer in business. Matco, although named as the Lessee on the Lease had nothing to do with the lease, never had possession of the Equipment, and never made any lease payments to Newcourt, or its successor in interest CIT Technology Financing Services, Inc. (CIT's Exhibit 3) (Newcourt/CIT).

It is without dispute that the Equipment involved in this dispute has been at all times in the possession of the Debtors, and is being used by the Debtors in its manufacturing operation. It is equally without dispute that all lease payments made to Newcourt from October 25, 1999, up to and including, December 19, 2001, were payments made by the Debtors (Debtor's Exhibit 3). According to the summaries provided by the Debtors, all payments were made payable to Newcourt Leasing Corp./CIT, and the checks were drawn on the bank accounts of the Debtors. (See copies of checks attached to the Summary, Debtor's Exhibit 3). Furthermore, additional monthly lease payments were made by the Debtors and made payable to Newcourt Leasing Corp./CIT from January 17, 2002, through May 27, 2003. The Debtors are unable to provide copies of the above mentioned cancelled check since their financial institution no longer furnishes such copies. However, it appears from the Cash Disbursement Journal of the Debtors (Debtor's Exhibit 4), that additional lease payments were made by the Debtors to Newcourt/CIT for the time period indicated above. There is no evidence in this record to indicate that Matco ever made any payments to Newcourt and/or to CIT since the execution of the Lease.

On September 15, 2003, Chris Reckner, the President of Sho–Me Natural Products, Inc. (Debtor), wrote (via fax) a letter to Thomas Zenz and offered to buy-out the Equipment originally leased to Matco under lease number 100–0000121–000. Mr. Reckner further stated in his letter that, even though the merger of the company's operations with Matco never materialized, the Debtors had the Equipment under the Lease and had made all payments under the Lease. Mr. Reckner also indicated that the Debtors had decided to keep the Equipment since it was used on a regular basis in its operation. Mr. Reckner offered to purchase the Equipment identified as serial number 444422, capsule filling machine, for the amount of $35,000 (Debtor's Exhibit 5). It is without dispute that at no time did Newcourt/CIT after receiving Mr. Reckners' letter on September 15, 2003, attempt to recover the Equipment,

commence any litigation to assert its rights to the Equipment, and never notified Matco or the Debtors that the Lease is terminated and that the Lease was in default. Most importantly, CIT failed to file a new UCC1–Financing Statement identifying the Sho-me companies as the Debtors replacing Matco as the originally named lessee of the Lease Agreement.

Based on the following facts that appear as established at the final evidentiary hearing, the Debtors contend that Newcourt/CIT never created a valid secured interest in the Equipment. They further contend that Newcourt/CIT are estopped to claim that the Debtors do not have a cognizable interest, legal or equitable in the Equipment involved in this dispute, and it has a no valid enforceable security interest in the Equipment involved in this controversy.

In support of this proposition, the Debtor's rely on the following undisputed facts: 1) Newcourt knew that the Equipment was delivered to the Debtors and not to Matco; 2) the Debtors had been using the Equipment and such Equipment is still being used by the Debtors in their manufacturing operations conducted in Hernando County which was the only known place of business of Matco and no such operation was never conducted in Hillsborough County; 3) Newcourt/CIT knew that all lease payments were made by the Debtors and not by Matco.

This Court is therefore satisfied that, even though the original lease agreement named Matco as the lessee and the lease agreement in paragraph 11, which expressly prohibits a transfer or assignment of a lease, the *de facto* lessee was the Debtors and not Matco. Therefore, this leaves for consideration the ultimate issue, whether Newcourt/CIT holds a validly created security interest pursuant to the provisions of Article 9 of the Uniform Commercial Code—Secured Transactions, as adopted by Chapter 679, Florida Statutes, Section 679.101.

It appears from the record and there is nothing to the contrary that at the time of the execution of the Security Agreement and the Financing Statement with Matco, CIT's predecessor in interest Newcourt Financial, did not know the Equipment would ultimately be delivered and used by the Debtors. However, it is also without dispute that since February 22, 1999, the execution date of the Lease, no payments were made by Matco. However, in fact, forty-four (44) monthly payments in the amount of $2,329.16, and one (1) payment in the amount of $6,987.48 was paid by Sho–Me Natural Products, Inc. Moreover, it is important to note that sometime in September 2003, CIT was put formally on notice by letter written by Mr. Reckner (Debtor's Exhibit 5), that the Debtors had possession of the Equipment and the Debtors asked CIT for the amount necessary to pay off the lease of the Equipment.

■ It is true that paragraph 11 of the Lease Agreement expressly prohibited a transfer or assignment of the lease without the consent of the lessor. Notwithstanding this Court is satisfied that CIT tacitly acknowledged the Debtors as the *de facto* lessees by accepting the lease payments from the Debtors. Even though the receipt of payments made by the Debtors may not operate as a waiver of the anti-assignment provision in the Lease, this fact coupled with other evidence in the record, warrants the conclusion that CIT has a duty to recognize the interest of the Debtors.

■ As noted earlier all lease payments were made by the Debtor and not Matco. CIT knew where the leased Equipment was located. In September 2003, CIT was put on notice by the president of the Debt-

ors that they had the Equipment, and would like to keep the Equipment and pay off the lease. The acceptance of payments coupled with the actual knowledge of CIT that the users of the Equipment were the Debtors, and not Matco, placed the duty on CIT to protect its interest in the Equipment. In September 2003, CIT had the obligation to file an amended UCC1–Financing Statement in order to put the world on notice that it claims a security interest in the Equipment in the possession of the Debtors. Having failed to do so, CIT has no valid security interest in the Equipment described as 1–IMA 40F Capsule Filler, Serial No. 444422, and the Equipment in question is free and clear of any interest of CIT. Therefore, CIT is not entitled to the relief it seeks and its Motion to Obtain Relief from Automatic Stay for the purpose of repossessing the Equipment is without merit and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that, the original transaction between Newcourt Leasing Corporation and Matco Enterprises Inc., was in fact a financing arrangement rather than a true lease. It is further

ORDERED, ADJUDGED AND DECREED that, notwithstanding the anti-assignment provision in the lease the true lessees were in fact the Debtors and not Matco. It is further

ORDERED, ADJUDGED AND DECREED that, the Equipment described as 1–IMA 40F Capsule Filler, Serial No. 444422, is free and clear, of any cognizable interest of CIT Technology Financing Services, Inc. It is further

ORDERED, ADJUDGED AND DECREED that, the Amended Motion for Relief from Automatic Stay (Doc. No. 162) filed by CIT Technology Financing Services, Inc. be, and the same is hereby, denied.